(C. D. 9,66)

Darmstadt Scott & Courtney v. United States

United States Customs Court, Second Division

(Decided November 14, 1945)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh, Dorothy C. Bennett,* and *Herbert M. Rosenberg*), special attorneys for the defendant.

Before Tilson, Kincheloe, and Lawrence, Judges

Kincheloe, Judge: The merchandise the dutiable classification of which is here involved consists of 66 bales invoiced as "Waste Old Bagging," imported from Canada. The merchandise was classified by the collector as "Burlap bags, printed or stenciled," and assessed for

duty at the rate of 1 cent per pound and 15 per centum ad valorem under paragraph 1018 of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

PAR. 1018. Bags or sacks made from plain-woven fabrics of single jute yarns or from twilled or other fabrics wholly of jute,  *  *  *; bleached, printed, stenciled, painted, dyed, colored, or rendered non-inflammable, 1 cent per pound and 15 per centum ad valorem.

The merchandise is claimed by the plaintiff company to be free of duty under paragraph 1617 of said act, as "Waste bagging."

Official samples of the merchandise are in evidence as collective exhibit 1, consisting of three used or secondhand jute bags.

The first witness for the plaintiff was Walter T. Clark, president of the plaintiff company, who testified that they are dealers in textile waste and woolen waste; that he has been in this line of business for 40 years, and has dealt for 30 years in merchandise like collective exhibit 1, which he states are wool bale covers; that he has been selling such merchandise to paper manufacturers and to people for manufacture of cotton patches, meaning pieces of the f bric cut to a size of about 27 by 55 or 60 inches, and weighing about 3 to 3½ pounds, to cover a hole in a cotton bale after it has been sampled; that such was its principal use going back to before 1930, and still is (R. 7, 8). He further testified that they have not bought or sold wool bale coverings like collective exhibit 1 to cover wool grown in the United States; that the domestic wool as produced in this country in the west is shipped in a bag made of light burlap that weighs about three pounds; that they imported merchandise like that under consideration right up to the time of the war; that Australia and New Zealand use such bags as the imported for exporting their wool to other countries; that when the buyers of the wool want to remove the wool from the bag they cut the jute covering of the bale of wool at the seams; that he has been importing these secondhand wool bale covers regularly every year right up to the time of the war at the ports of Houston, New Orleans, Savannah, and Charleston, the principal southern ports; and that prior to this importation at Detroit, and for many years back, has not had to pay duty on this merchandise. He further stated that wool is imported into this country from Australia and New Zealand in the same kind of containers as exhibit 1, and that he buys the identical kind of secondhand wool bale covers in this country and sells them for making cotton patches and for making paper, but that the use for cotton patches is by far the greater in normal times (R. 3/19).

The second witness for the plaintiff was Julius I. Dorfman, a dealer doing business in secondhand burlap bags under the name of Dorfman Bag Co. He testified that he has dealt in merchandise like collective exhibit 1 since about 1905; that they use it in various ways by cutting

it up and using it for baling rags, and making sheets out of them, or covers. He said the wool bale covers are partly slashed anyway, so they open them up in a flat sheet, sew up the corners where they are opened, and use them as bale covers; that they are made up in. trade sizes; that 15 years ago the chief use of the merchandise was as cotton patches on cotton bales for export of a size approximately 27 by 54 inches; that they are not now (1945) used for that on account of the war, as there are hardly any exports to Germany and Japan, which were the principal markets for our cotton; that they also repair secondhand bags; that they never repaired bags like collective exhibit 1 to put back on the market for use as coverings of wool; that they do not use such material for bags because it is too heavy; and that it is better to sell it as coverings for baling rags principally.

On cross-examination the witness further testified that he has been getting his supply of merchandise like collective exhibit 1 for the last few years from domestic woolen mills which import wool from Australia and New Zealand; that while the seams on the imported secondhand bags could be sewn up and the bags repaired so as to be again usable as bags, there was no demand for same in this country at present or in 1930, as they are too heavy.

John H. Walker, examiner of merchandise at the port of Detroit, was called as a witness by the Government. He testified that from 1939 to 1942 he had been an examiner of merchandise at Portland, Oreg., and for 6 years prior thereto had been an examiner's clerk in Seattle, Wash.; that all that time he had been connected with the type of merchandise like collective exhibit 1, and that in his experience he has passed on thousands of bales of Australian and New Zealand wool packed in like containers; and that he made the advisory return of the merchandise in the present instance. He stated that two bales of the importation were designated for examination; that he examined all the bags in each of the bales; and that the three bags in collective exhibit 1 represent the bags that were in the two bales.

An inspection of the three bags shows them to be rectangular in shape, with four sides about 27 inches wide and 52 inches long, with square fabric tops and bottoms. One of the bags is slit along four of the corner seams for a distance of about 16 inches from the top, with the top square missing. The bag shows five or six bale hook holes or tears, and has large stencil markings on the outside, also on the inside. The second bag has the top square slit open around three sides, with three or four small bale hook holes or tears, and has also prominent stencil markings on the outside. The third bag has the top square almost entirely cut off, with further slits about 6 inches long along the four sides of the bag from the top. This also has several bale hook holes or tears, and stencil marks on the outside. Examiner Walker stated that in his opinion the bags were in good condition. He also

stated that he had been in mills in Portland, Oreg., where they process wool, and that they paid particular attention to taking wool out of the bags and taking good care of them so that they could be returned to the Australian shippers and receive credit for the bags. This, however, was simply hearsay, as the witness admitted he did not actually see such bags exported. Even assuming, however, that some bags were returned to wool shippers in Australia and New Zealand for reuse by them as bags after sewing and repairing, this in itself would not prove that they were so reused, or so chiefly reused in the United States, or that they were commercially bought and sold in this country as bags.

The witness further stated that he made an investigation as to whether Australian wool containers like collective exhibit 1 have been reused commercially in the United States, and that he found that Draper & Co., wool dealers and importers in Boston, have been using those containers for the repacking of wool; that the American Woolen Co. and the Arlington Woolen Mills in Boston use bags like these for the repacking of woolen noils and wool waste, and for inter-mills shipment between the various mills in Boston.

This, of course, again is in the nature of hearsay, as it does not appear that the witness himself actually saw such secondhand bags reused in the manner or for the purpose stated, or that the merchandise was actually bought and sold in commerce as bags, or for reuse as bags, nor that such use, if any, was the chief use of the imported merchandise in this country.

So far as we can see, the present merchandise is not much, if any, different in character from the Australian wool tares passed on by this and the appellate court in previous cases.

The provision for the free entry of "Waste bagging, and waste sugar sack cloth" appeared for the first time in paragraph 1516 of the Tariff Act of 1922. In *Ash* v. *United States*, 16 Ct. Cust. Appls. 225, T. D. 42838, certain Australian wool tares were assessed for duty as jute bags or sacks under paragraph 1018 of the Tariff Act of 1922, and were claimed to be free of duty under paragraph 1516, as waste bagging. The testimony in that case was very much the same as that of plaintiff's witnesses in the instant case, to the effect that if the splits on the sides of the bags were sewn up and repaired they would again be bags, but that they were not commercially used or bought and sold as bags, and that in their imported condition they were only used for making into cotton patches. The claim of the plaintiff for free entry under said paragraph 1516, as waste bagging, was sustained.

The same class of merchandise came before this court on an American manufacturer's protest in the case of *American Mfg. Co.* v. *United States* (*Mente & Co.*, Party in Interest), T. D. 48018 (68 Treas. Dec. 726). The wool tares there had been passed free of duty by the

collector at Galveston under paragraph 1617 of the Tariff Act of 1930,. as waste bagging, and were claimed by the plaintiff manufacturer to· be dutiable under paragraph 1008 of said act, as woven fabrics at the appropriate rate according to the specifications therein provided, or under paragraph 1023 as manufactures wholly or in chief value of vegetable fiber, except cotton, not specially provided for, or under· paragraph 1558 as nonenumerated manufactured articles, or dutiable· as cotton bagging under paragraph 1019, by virtue of the similitude clause in paragraph 1559. It was again shown in that case·that the wool tares in the condition as imported were not fit for reuse either· as bags or bagging, and were not sold to consumers for such purpose, but were used exclusively as material for the manufacture of cotton patches; that is, for covering holes in bales of cotton, and for tare and marking purposes. After reviewing numerous authorities and legislative history on the subject, the merchandise was again held free of duty as waste bagging, as passed by the collector. It may be added that no appeal was taken by the Government from that decision.

In our opinion, the testimony of the plaintiff in the present instance is practically to the same effect as in the cases cited, *supra,* and while it may be possible that some woolen mills in Boston may have found it convenient or practical to use some used wool tares for repacking wool noils or wool waste during the war emergency, as testified by the Government examiner, his testimony seems far from sufficient to overcome that of plaintiff's two witnesses who have been importers and dealers in this merchandise for many years, or to show that the chief use of merchandise like that here in question was other than for making into cotton patches or other waste bagging purposes either in 1930 or at the time of importation on August 6, 1943.

The claim of the plaintiff for free entry of the merchandise under paragraph 1617 of the present tariff act, as waste bagging, is therefore sustained. The protest is, however, overruled in all other respects. Judgment will be rendered accordingly.