(C.D. 2838)

RACHMAN BAG CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 5, 1966)

*Sharretts, Paley & Carter* (*Donald W. Paley* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Richard J. Kaplan* and *Avram Weisberger*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise involved in these protests, which have been consolidated for purposes of trial, was described on the invoices as "Old burlap bags and bagging." The collector classified 30 percent of the merchandise on each shipment as waste bagging entitled to free entry pursuant to the provisions of paragraph 1617 of the Tariff Act of 1930 and the remaining 70 percent thereof as bags, wholly of jute, printed, stenciled, etc., dutiable at the rate of 7½ per centum ad valorem, plus ½ cent per pound, as provided in paragraph 1018 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, supplemented by Presidential proclamation, 83 Treas. Dec. 256, T.D. 51954. Plaintiff claims that all of said merchandise was entitled to free entry as waste bagging in accordance with said paragraph 1617.

The parties agreed that that portion of the merchandise consisting of "calcutta wrappers" was waste bagging and properly free of duty within the provisions of paragraph 1617 of the Tariff Act of 1930. In its brief, plaintiff abandoned protest 63/14142, conceding that it was untimely.

The statutes involved in the case read as follows:

Paragraph 1018 of the Tariff Act of 1930, as modified, *supra:*

Bags or sacks made from plain-woven fabrics of single jute yarns or from twilled or other fabrics wholly of jute:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Bleached, printed, stenciled, painted, dyed, colored, or rendered noninflammable___ ½¢ per lb. and 7½% ad val.

Paragraph 1617, *supra:*

Waste bagging, and waste sugar sack cloth.

Two witnesses testified on behalf of the plaintiff. The first was Mr. Louis Rachman, president of the Rachman Bag Co., Inc., the plaintiff in this case. Mr. Rachman has over 16 years' experience in buying, selling, and supervising the processing of waste bagging which he said was cut up into so-called nursery squares and bale wrappers. He has been consulted on occasion by the examiners of bags at the port of New York.

Mr. Rachman testified that the merchandise in question consisted of split and cut asbestos bags which, in their imported condition, were not fit for reuse as bags or containers of any kind. The witness indicated that he personally checked the instant shipments off the trucks to make certain that the merchandise was exactly what he had intended to purchase. He then supervised the processing of the importation in his plant. He further stated that the samples offered in evidence

as plaintiff's collective exhibit 2 were removed by him at random from entry 01478 or 01682, covered by protest 63/14145. An examination of these bags reveals that they have been cut open at the ends and slit all the way down the center or side. The witness testified that these samples accurately represented the merchandise in all of the shipments in question. Except for the Calcutta wraps, about which there is no dispute, the entire shipment, according to the witness, was made up of "split and cut asbestos bags." Despite some variations in cleanliness, size, and age, all of the merchandise was in the same condition, namely, split and cut. The witness knew of no "good bags" in the shipment, that is to say, no bags suitable for use as containers in their imported condition.

The second witness for the plaintiff was Mr. Joseph Pomerantz, the owner of the Federal Bag Co., Ltd., of Montreal, Canada. Mr. Pomerantz has 25 years' experience in the bag industry, supervising the buying, processing, and selling of used jute bags and bagging. He testified that the importations described on the invoices as "Old burlap bags and bagging" consisted of split and torn asbestos bags. He recalled that he had supervised the preparation of the invoices and that the description thereon accurately identified the importation. He did not, however, recall details as to the size, quantity, and cleanliness of the imported merchandise.

Mr. Pomerantz testified that the split bags were obtained by him from a number of Canadian asbestos factories. At these factories bags which had been pressure packed with raw asbestos must, of necessity, be split open to release the contents. This procedure produced the split bags such as those represented by plaintiff's collective exhibit 2. The witness stated that the burlap bags which were opened in the normal manner, that is to say, by undoing the string at the top, were sold and reused in Canada and were not ordinarily exported by him to the United States. According to the witness, the presence of any reusable bags in the shipments in question would have been entirely due to the oversight of his employees and would not, in any case, have constituted more than 1 percent of the shipment. Finally, Mr. Pomerantz stated that, in their imported condition, the split bags were unfit for reuse as bags.

Our analysis of the record as hereinbefore outlined leads us to the conclusion that the importation in issue consisted of split bags which have been so mutilated prior to importation as to be unfit for use as containers. We are of the opinion that, by virtue of their experience in the used bag industry and their familiarity with the instant shipments, the two witnesses who testified on behalf of plaintiff were generally capable of recognizing and describing the types of bagging involved and the condition thereof at the time of importation. Mr.

Rachman's testimony was predicated upon personal supervision and checking of the merchandise from the time of importation until its conversion into nursery squares and wrappers and, although Mr. Pomerantz could not recall details of cleanliness, quantity, and size, he did testify unequivocally that the shipments in question consisted entirely of split bags.

We are satisfied as well that the manner of selection of plaintiff's collective exhibit 2 qualifies it as a representative sample of the imported merchandise. According to the importer, the samples were taken at random from one of the shipments and, while there are variations in size, cleanliness, and extent of deterioration, they are, nevertheless, all split to such an extent as would render them unfit for use as containers without further processing.

Moreover, there was no evidence to controvert the testimony adduced by plaintiff. The presumption of correctness which attaches to the classification of imported merchandise is not evidence, and may not be weighed against evidence. *S. S. Kresge Co.* v. *United States*, 25 Cust. Ct. 89, C.D. 1269.

The question of whether used bags have been so far damaged prior to importation as to be unfit for reuse as containers and, hence, to be entitled to free entry as waste bagging, has frequently occupied the attention of the courts.

In the case of *T. E. Ash* v. *United States*, 16 Ct. Cust. Appls. 225, T.D. 42838, the court was concerned with the question of whether certain wool tares, namely, bags which had been cut and slashed to remove wool, were waste bagging. The preponderance of evidence in the case revealed that the wool tares were no longer capable of being used for the purpose of their original manufacture and only if sewn and patched could they be used as containers. It was further shown that in practice the wool tares were primarily used as patches for covering holes in bales of cotton. After adverting to the classical definition of waste in *Patton* v. *United States*, 159 U.S. 500, as embracing articles no longer fit for the purpose originally intended, the court held the merchandise before it to be waste bagging within the provision of paragraph 1516 of the Tariff Act of 1922.

In *American Mfg. Co.* v. *United States* (*Mente & Co., Party In Interest*), 68 Treas. Dec. 726, T.D. 48018, wool tares were again found to be waste bagging. In so concluding, the court was influenced by the *Ash* decision as well as the fact that a reference to that decision in the 1929 Summary of Tariff Information, coupled with a reenactment of the waste bagging provision in the 1930 Tariff Act, constituted legislative approval of the principle that "refuse" bagging which is no longer susceptible of use for the purposes of its manufacture, is waste bagging. The court was further persuaded to its conclusion by the

consideration that in the condition in which imported the wool tares were unfit for use as containers.

In *Darmstadt Scott & Courtney* v. *United States*, 15 Cust. Ct. 168, C.D. 966, rectangular wool bale covers which had been slashed open were held to be waste bagging under paragraph 1617 of the Tariff Act of 1930, inasmuch as they were unfit for use as bags, were never repaired for such use, and were essentially the same as the wool tares dealt with in prior cases.

In keeping with the above reasoning, this court has excluded from classification as waste bagging pieces of burlap hop sacks which, though used, were capable of being used again for baling hops. *John I. Haas, Inc.* v. *United States*, 19 Cust. Ct. 43, C.D. 1065.

We note in passing the following discussion of waste bagging in the Summaries of Tariff Information, 1948, volume 16, free list, part 1, page 161:

Waste bagging is jute bagging which is no longer suitable for its original use without reconditioning * * *.

From the foregoing, it is evident that whether used bagging is to be regarded as bags or as waste bagging for tariff purposes depends, in the first instance, upon its condition at the time of importation and, in the second place, upon a comparison between its use in its original state and its susceptibility of use in its imported condition. Where, as here, the material imported is so deteriorated from its original form as to be incapable of use as containers, and the use to which it is commercially and practically adapted differs substantially therefrom, it is such a waste product as to fall naturally within the provisions of paragraph 1617, *supra*, for waste bagging.

We are of the opinion that the split bags here in issue must be so treated. In their imported condition, they cannot serve as containers. The mutilation they have undergone renders them unfit for such use, and the evidence establishes that they are not practically capable of reuse as bags. Indeed the testimony suggests that the subject split bags have been so drastically damaged in the removal of their original contents as to be incapable of being restored to their original condition.

By reason of the foregoing, we find the merchandise at bar to be waste bagging within the provisions of said paragraph 1617 and, accordingly, entitled to free entry. The claim in the instant consolidated protests to that effect is sustained, except that protest 63/14142, having been abandoned, is dismissed.

Judgment will be entered accordingly.