(C.D. 4004)

L. E. Coppersmith } *v.* United States
Sierra Bag Co.

United States Customs Court, Second Division

(Decided April 24, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Herbert P. Larsen* and *Gilbert Lee Sandler*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The entry before the court covers 334 bales of merchandise described as gunny bags, unrepaired, split side and bottom, approximately 41 by 23.5 inches (invoice 9–2/66) and 200 bales of merchandise described as wool packs, unrepaired (invoice 10–2/66). The goods were exported from Japan for the account of Kern Bag Service, Inc., Bakersfield, California, and were sold in transit to Sierra Bag Co., also of Bakersfield. Both classes of merchandise were assessed with duty at 0.5 cent per pound and 5.5 per centum ad valorem under item 385.50 of the Tariff Schedules of the United States, as bags or sacks of textile materials, of vegetable fibers, except cotton, bleached, colored, or rendered nonflammable. It is claimed that the goods covered by invoice 9–2/66 are free of duty under item 356.50 of said schedules, as amended by the Tariff Schedules Technical Amendments Act of 1965, as woven fabrics of vegetable fibers, suitable for covering cotton bales, recovered from used bags and sacks. The goods covered by invoice 10–2/66 are claimed to be free of duty under said item 356.50 or under item 390.20, as "Rags: Bagging and sugar-sack fabric" or under item 390.60, as other rags.

The pertinent provisions of the tariff schedules, as amended, are as follows:

> Bags and sacks, or other shipping containers,
> of textile materials:
> Of vegetable fibers, except cotton:

| | | |
|---|---|---|
| | * * * * * * * | |
| 385.50 | Bleached, colored, or rendered non-flammable | 0.5¢ per lb. + 5.5% ad val. |
| | Woven fabrics of vegetable fibers, suitable for covering cotton bales: | |
| 356.50 | Recovered from used bags and sacks | Free |
| | Rags: | |
| 390.20 | Bagging and sugar-sack fabric | Free |
| | Other: | |
| | * * * * * * * | |
| 390.60 | Other | Free |

The headnotes to schedule 3, part 7, subpart C covering rags and cordage provide:

> 1. The term "*rags*", as used in this subpart, covers new fabric clippings, and fabrics, wearing apparel, furnishings, and other textile articles which are worn out, soiled, torn, or otherwise damaged, all the foregoing, whether or not carbonized, fit only—
> > (i) for the recovery of their constituent fibers or materials,
> > (ii) for use in papermaking,

(iii) for manufacture into polishing wheels and similar articles,

(iv) for use as wiping rags of any size, or

(v) for similar uses.

In support of the position that the merchandise as imported did not consist of bags but of woven fabrics recovered from bags, plaintiffs called Morris G. Rosenberg, co-owner of Sierra Bag Co. He testified that he has been with the firm for 22 years and that it is engaged in the sale in California of steel cotton ties and bagging for cotton wrapping to vegetable oil mills and cotton gins. His functions are in administration, sales, and purchases. He stated that he was familiar with the invoices involved herein and the merchandise covered thereby because he had purchased it, had examined it when it arrived, and had sent the documents to the brokers. According to the witness, both classes of merchandise were bags or containers which had been slit at the side and bottom before importation and were in sheet form when they arrived. They were suitable for covering cotton bales and were so used. He identified a sample as representative of the merchandise covered by invoice 9–2/66, although not necessarily from that shipment. (Exhibit 1.) It consists of a seamed rough woven fabric about 42 by 38 inches, apparently cut on one side and one end. Mr. Rosenberg testified that the description on the invoice indicated that the bags had been used in Japan to contain rice or other grains, were of good quality, and might have small holes which were unrepaired. The dimensions, 41 by 23½ inches were of the material in folded condition. When unfolded it would measure about 41½ by 47 inches. He said that after importation such sheets are joined together into the desired length to form covering for a bale of cotton. He has sold such articles to cotton gins and to vegetable oil mills that distribute them to the gins they own. At cotton gins, cotton is made up into bales, wrapped with the bagging or covering, and fastened with steel ties. Mr. Rosenberg knew of no other use for these articles.

According to the witness, the term "unrepaired" on the invoices meant the merchandise was not repaired or mended. A repaired gunny bag would be one that is without holes and is not split at the sides and bottom. For his purposes, slit bags with small holes were acceptable, but not holes the size of watermelons. The term "quality guaranteed" in the invoice meant that the goods were suitable for being used to make covers for bales of cotton, rather than only for use as scrap. The witness said there is no market for merchandise such as exhibit 1 as a bag. He said that another company with which he is connected brought in burlap to make into potato bags but that potatoes are the only thing packaged in burlap bags now; everything else is transported in bulk.

He also stated that it would not be economical to convert merchandise like exhibit 1 into bags.

The witness identified another sample as part of a wool pack such as those involved herein. (Exhibit 2.) He explained that a wool pack is a container for wool which roughly measures "27 x 27 x 27 x 54" inches, and is used by wool exporters in New Zealand and Australia. It includes a "cap" that is sewed onto the top and bottom of such containers. Exhibit 2 is only the "cap" portion of a wool pack. Other components would be of the same material but would be the cut and split sides of the wool pack. These other portions in the shipment at bar appeared to have been used more than once; they were not as bright looking as the exhibit. The imported wool packs were used partly for making bagging for covering cotton bales and partly as burlap scrap, which is ground up with other ingredients and made into carpet padding.

The witness said that very few wool packs as such are used in this country because it is not a large wool-exporting country. To be economically useful wool packs must be imported in split condition because the material is very heavy. To split it here would require special cutting machines and an excess amount of labor.

Mr. Rosenberg testified further:

Q. It's your testimony that in this case all the bags which you imported had their side and bottom slit at the time of importation?—A. That's correct.

Q. Did you examine all of them?—A. I didn't examine every single bag.

Q. Did you examine any of them?—A. Yes.

Q. How many bales were there in this importation?—A. 334.

Q. How many of them did you examine?—A. I started out by examining a couple. The shipment is going through. I am in the plant inspecting and seeing that everything is proper. I don't stand there and inspect every one. We do have administrative functions which require my time as well.

* * * * * * *

Q. So it has happened that bags have come to your attention that were not slit?—A. Yes.

Q. You did not notice any in this particular shipment?—A. No.

Q. You did not examine every bale in this shipment?—A. No; that's not my function to examine every bale.

Q. Is it your function to examine bales of imported merchandise?—A. Yes; it is. As an owner of my business I like to know what is coming in and what I bought and any specifications what I bought. But I like to consider myself an executive and find time to administer my company as well.

Mr. Rosenberg said that it had happened that bags which were not slit side and bottom had come in and that the customs service was notified and the bags were split in bond.

Defendant called Irwin Teres, senior import specialist at the port of Los Angeles. He testified that he has handled bags, waste bagging, and sugar-sack fabric, but now handles only bags. He was familiar with the entry involved herein, appraised the merchandise covered by it, and rendered an advisory classification under item 385.50. At the time of appraisement he requested that a bale from the shipment be sent to the public stores and he viewed three to six samples out of the bale. He observed merchandise such as exhibit 1 but sewed as a bag on all sides except one opening at one end. It could be used as a bag or container. He saw no merchandise that was slit on the side and bottom. He was not able to locate a sample.

On cross-examination Mr. Teres was shown the summary of examination and appraisement and testified that the initials SB thereon were those of Sally Brunton, an import specialist. He said he had probably instructed her to designate a bale for examination but that she was not his assistant at the time. He could not tell whether the bale was taken from one lot or the other of those covered by the entry. He did not know who opened the bale and extracted the samples.

The first question presented is the identity of the merchandise in its imported condition.

The merchandise was ordered as bags which had been slit, in which form they were suitable for use in making coverings for cotton bales. The record indicates that it would have been costly to slit them in this country and that in bag form there was little use for them. While neither of the witnesses had observed the contents of every bale, Mr. Rosenberg testified that he had seen the merchandise when it arrived and had inspected it as it went through the plant. He was intimately associated with its purchase for a particular purpose and its processing and sale for that purpose. He did not notice any bags which had not been slit and stated that both classes of merchandise consisted of bags which had been slit and were suitable for covering cotton bales and were so used. The witness did recall another shipment in which bags had been found and said that the customs service had been notified and the bags split in bond.

The import specialist testified that he had seen a few samples from one bale and that they were in the form of bags. However, he did not recall exactly how many samples he saw nor from which class of merchandise. He did not extract the samples from the bale and did not know who did. He believed that a sample was kept but could not locate it at the time of the trial. His initials are not on the summary sheet.

Those which do appear are apparently those of another customs employee who was not Mr. Teres' assistant at the time.

Under the circumstances, we attach more weight to the recollection of plaintiffs' witness who was intimately associated with the importations, knew what had been ordered and for what purpose the merchandise was to be used and was used, and had examined a larger quantity, than to that of the import specialist who in the course of his duties examines many shipments and whose recollection as to this one was uncertain. *Danbury & Bethel Fur Co. (New York)* v. *United States*, 8 Cust. Ct. 541 Abstract 47262 (1942). He was not even able to state whether the samples he examined came from a bale covered by one invoice or the other.

We conclude that the record is sufficient to establish that the merchandise was not bags or sacks but was in the form of folded sheets or bags which had been slit sides and bottom.

Decisions under prior tariff acts have held that burlap bags, wool tares, and wool bale covers which had been slit, cut or slashed and were not fit for use as containers without further processing were waste bagging entitled to free entry under paragraph 1516 of the Tariff Act of 1922, or paragraph 1617 of the Tariff Act of 1930. *T. E. Ash* v. *United States*, 16 Ct. Cust. Appls. 225, T.D. 42838 (1928) ; *American Mfg. Co.* v. *United States (Mente & Co., Party in Interest)*, 68 Treas. Dec. 726, T.D. 48018 (1935) ; *Darmstadt Scott & Courtney* v. *United States*, 15 Cust. Ct. 168, C.D. 966 (1945) ; *Rachman Bag Co., Inc.* v. *United States*, 57 Cust. Ct. 465, C.D. 2838 (1966).

The Tariff Schedules of the United States as originally enacted contained no free entry provision for waste bagging, but were amended later to correct the inadvertence. Senate Report No. 530, 89th Congress, 1st Session, 1965 U.S. Code Cong. & Admin. News 3416, 3427; 111 Cong. Rec. 20412 (1965).

When the bill was pending before the Senate, Senator Smathers explained its purpose as follows (111 Cong. Rec. 20412) :

> Mr. Smathers. * * * Under Section 17 it makes no difference what kind of used bag or sack the cotton wrapping may be recovered from so long as it is woven of vegetable fiber. It is the committee's clear understanding that this amendment fully restores the duty-free treatment these split bags enjoyed before the tariff schedules were changed. These split bags generally are stitched together to make pieces large enough to cover a cotton bale.

Accordingly, the merchandise covered by invoice 9–2/66, and the portion of the wool sacks covered by invoice 10–2/66 which was suitable

for covering cotton bales are entitled to free entry under item 356.50, *supra*.

There is evidence, however, that a portion of the wool packs was not of good enough quality for this purpose and was sold as burlap scrap. It is claimed to be free of duty under item 390.20 (schedule 3, part 7, subpart C), as "Rags: Bagging and sugar-sack fabric." The term rags as used in subpart C "covers new fabric clippings, and fabrics, wearing apparel, furnishings, and other textile articles which are worn out, soiled, torn, or otherwise damaged, * * * fit only—(i) for the recovery of their constituent fibers or materials * * *."

According to the record, material from the imported wool packs not suitable for covering for cotton bales and thrown into scrap burlap is ground up with other ingredients and made into carpet padding. Mr. Rosenberg testified:

> Q. When you grind it up is that to recover the fibers?—A. It makes it pliable. And they garnet it and lay it out flat and recover it in that manner.
>
> * * * * * * *
>
> Q. Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2, with regard to—I think you said on redirect examination that these could be reprocessed, is that correct, could be broken down for the material they contain?—A. You mean in grinding it, in selling it as scrap?
> Q. Yes.—A. Yes; it could be.

We conclude that this portion of the wool packs falls within the free entry provision of item 390.20, *supra*.

It follows that all of the merchandise covered by invoice 10–2/66 is free of duty either under item 356.50 or item 390.20. Segregation pursuant to General Headnote 7(a) is not required nor is it necessary to determine under which item the merchandise is classifiable since both provide for free entry. *United States* v. *Buffalo Natural Gas Fuel Company*, 172 U.S. 339 (1899); *United States* v. *American Machine & Metals, Inc.*, 29 CCPA 137, C.A.D. 183 (1941).

In view of this holding, plaintiffs' alternative claim for classification of part of the wool packs under item 390.60, as other rags, is inapplicable.

We hold that all of the merchandise involved in this case is free of duty under item 356.50, *supra*, as woven fabrics of vegetable fibers suitable for covering cotton bales recovered from used bags and sacks, or under item 390.20 as "Rags: Bagging and sugar-sack fabric." The protest is sustained and judgment will be entered for the plaintiff.